*Decision will be entered under Rule 50.*

CHEROKEE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SUNSET-LUCILLE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93962, 93964. Promulgated May 22, 1940.

*Robert M. L. Baker, Esq.*, for the petitioners.
*E. A. Tonjes, Esq.*, for the respondent.

## OPINION.

Hill: The common issue in these consolidated proceedings is whether under the facts stated the petitioners realized income during the taxable year equal to the difference between the petitioners' cost and the face value of certain mortgage certificates which were accepted by the Mortgage Guarantee Co. at the latter figure in satisfaction of petitioners' indebtedness. There were set forth in the petitions additional assignments of error which apparently were abandoned before trial, as to which we render no decision.

The argument of the petitioners is that the terms of the purchase of the realty provided for an exchange of property—the mortgage certificates for the real estate—and that the gain, if any, is to be determined under sections 111 and 112 of the Revenue Act of 1934. Petitioners contend that no gain resulted from the exchange, since the fair value of the property acquired in each case did not exceed petitioners' cost.

The $175,000 price named in the Cherokee contract and the $112,500 set forth in the Sunset-Lucille contract, petitioners argue further, are merely figures in "a method of accounting adopted by the parties, and a definite and fixed obligation on the part of the petitioners to pay the face amount thereof in money or money's worth was not incurred."

The respondent's position, on the other hand, is that the obligation of the petitioners to pay fixed amounts in money is plain on the face of the contracts and that the satisfaction of those debts at less than their face value resulted in income to the petitioners.

We think the petitioners must be sustained.

The two agreements for the purchase of the realty here involved must be construed each as a whole. Whatever obligations the con-

tracts created to pay in money the petitioners' notes, were modified by the provision for their payment in mortgage certificates to be accepted at their face value. Passing for the moment petitioners' argument that the effect of this provision is to remove any obligation to pay the notes in money, we think the least force that may be assigned to it is to construe the provision as allowing an exchange of properties as an alternative method of discharging the debt. By following this method through the petitioners acquired, in so far as the mortgage certificates were accepted in exchange for the real estate, properties the fair value of which in each case is to be compared with petitioners' cost in recognizing the gain, if any, arising from these dealings. We think the naming of a price for the properties in excess of the fair value in each case can not alter the character of the transactions. In the method employed by the petitioners in discharging their obligations it had no more importance than a book entry to balance the aggregate par value of the certificates transferred.

This alternative method of payment provided in the original obligation is the factor here present which differentiates this case from those on which the respondent places reliance. In *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and in *Helvering* v. *American Chicle Co.*, 291 U. S. 426, the debts which were discharged at less than their face value were absolute obligations not modified by any alternative methods of payment. The taxpayers escaped the full measure of their liabilities through dealings wholly unconnected with their original contracts. In the present case, on the other hand, the obligations assumed were met in the very terms which were specified and no income has resulted unless, as will presently be considered, gain may be recognized on the exchange. Cf. also, *Carlisle Packing Co.*, 29 B. T. A. 514; *L. D. Coddon & Bros., Inc.*, 37 B. T. A. 393.

We conclude, viewing these transactions as an exchange of property in so far as the mortgage certificates were accepted in payment for the realty, that the fair value of the property so acquired did not exceed the cost of the certificates transferred. We have considered all the pertinent evidence and have found that the property acquired by the Cherokee Co. at the time of acquisition had a value not in excess of $129,672.19. Since this is the aggregate cost of the obligations transferred from the purchaser to the vendor plus the $85,000 first mortgage indebtedness, we hold that the Cherokee Co. realized no gain or income from the transaction here in question.

The value of the properties acquired by the Sunset-Lucille Co., which we have also determined from a consideration of all the pertinent evidence, was at the time of purchase not in excess of $101,427.81. Since this amount does not exceed the aggregate cost

of the certificates transferred plus the $71,000 first mortgage indebtedness and the $19,000 cash payment, we hold that the Sunset-Lucille Co. realized no gain or income from the transaction here in question.

The situation in the present case is not unlike that in *Columbia Pacific Shipping Co.*, 29 B. T. A. 964, where the taxpayer corporation declared a dividend of a certain fixed amount payable in certain stock, owned by the corporation, at its par value. The Commissioner determined that the taxpayer realized income through the discharge of its obligation to pay the dividend so declared equal to the difference between the cost of the stock distributed and its par value. We held that although the declaration of the dividend named a fixed sum, it was made payable, in effect, in kind and no income therefore was realized by the corporation. See also *General Utilities & Operating Co.*, 29 B. T. A. 934; affd., 296 U. S. 200. Cf. *Twin Ports Bridge Co.*, 27 B. T. A. 346.

If the contracts here are regarded as essentially contracts of purchase and sale, as distinguished from exchanges, with provisions permitting payment in either one of two ways, the result is the same regardless of the value of the property purchased. There is no gain or loss on the purchase of property. *Palmer* v. *Commissioner*, 302 U. S. 63. By making payment in the medium most advantageous to them, the petitioners acted entirely within the terms of the contracts, discharging fully their obligations in the manner provided for and not for any lesser sum. The optional provisions for payment through the medium of the vendor's obligations modified those provisions of the contracts which stated a definite sum, so that it can not be said that there was a money obligation on the part of the purchasers. See *General Utilities & Operating Co.*, *supra*.

Reviewed by the Board.

*Decision will be entered under Rule 50.*