OPINION. Opper, Judge: Both parties accept the principle of United States v. Kirby Lwnber Co., 284 U. S. 1, as applicable to the present transaction. They differ as to the year in which gain to petitioner would be realized thereunder. The facts are unusual. Petitioner had outstanding a first mortgage bond issue. It borrowed additional funds on its five-year notes, and in that connection obligated itself to devote part of its earnings to the reduction of the mortgage bonds. -When acquired, however, the bonds were not to be retired, but had to “remain alive” and be delivered to the trustee under the note issue, who was to hold them as additional collateral for payment of the notes and, if necessary, resell them for the creditors’ benefit. During the years now in controversy bonds were purchased by petitioner at substantial discounts from the issue figure and forthwith delivered to the noteholders’ trustee, who retained them for several years until, in a year not now before us, petitioner paid off the notes and received the bonds unencumbered. Respondent’s contention that this is a typical case for application of the Kirby doctrine can not be sustained. Petitioner did not, in reality, obtain a cancellation of its debt in the instant years, Garland Coal & Mining Co. v. Helvering (App. D. C.), 75 Fed. (2d) 663, 664; it did not effectively free any part of the mortgaged assets from the continuing lien of the bonds, see Helvering v. American Chicle Co., 291 U. S. 426; and it could not be said with certainty at that time that, if the pledged bonds had to be resold, the entire transaction might not result in a loss. See Bowers v. Kerbaugh-Empire Co., 271 U. S. 170. The most troublesome suggestion is that, if the ultimate gain, clearly and in fact concededly secured by petitioner, is not subject to tax in the years of purchase, it will escape taxation altogether. See Central Paper Co. v. Commissioner (C. C. A., 6th Cir.), 158 Fed. (2d) 131. But this is not a case as that was, of voluntary retention, in the debtor’s own hands of securities which, when acquired, became extinct as both obligation and collateral. See Marion A. Blake, 8 T. C. 546. Petitioner insists in its brief that “The obligation embodied in these bonds thus remained alive in the hands of another and was not extinguished until June 1945 when the five-year notes were paid * * Since we are in accord with that statement as a correct interpretation of the present facts, and perceive no obstacle to the taxability of the transaction at that time, we are unable to share respondent’s fears that petitioner’s gain will ultimately escape all taxation. On this issue, and as to the present years, the deficiency is disapproved. The second and third issues may be considered together. In a previous year petitioner had loaned some of its own stock to Terminal, another corporation, for use as collateral on a bond on appeal from a judgment against Terminal. The judgment had become final, but upon the apparent inability of Terminal to pay it, a third corporation, North American, advanced the funds for that purpose and took over petitioner’s stock as security for its advance. The parties are in apparent agreement that this constituted a conversion of the stock by Terminal, giving rise to a claim against it at that time. They also seem to agree that North American, which was willing to surrender the stock only upon payment of its advance, was within its rights, and that petitioner acquired no valid claim against it. Petitioner had also some miscellaneous loans and accounts receivable against Terminal, and it is the deductibility of all of these items in the tax year, as uncollectibles, which gives rise to the controversy. We think enough has been shown by the record before us to demonstrate that only in the present year could these debts be regarded as wholly worthless. While a receiver had already been appointed, and his preliminary report had indicated that Terminal was “heavily insolvent,” there was still the prospect of a reorganization with the consequent possibility of some, if not complete, recovery. The debt may have been partially uncollectible earlier, but that would not foreclose its charge-off in full when, in the instant year, the last operating property was sold and all hope of any reorganization and, with it, collection even in part, disappeared. Moock Electric Supply Co., 41 B. T. A. 1209. The claim against Terminal for the stock, however, was limited to its fair market value at about the time of conversion, as petitioner concedes, 8 C. J. S. 365-866; Foley v. Wassermann, 319 Pa. 420. Although that sum, which is stipulated, is radically less than petitioner’s basis, we view it as the limit of the present deduction. The balance, presumably, was lost when the conversion transformed the property itself into a mere cause of action, and one, besides, for a reduced amount. But whatever the time and theory of proper deduction for the remainder, it is clear, at least, that all that remained of the property in the year before us was a claim for damages, and that this is the utmost that can be said to have been lost by the uncollectibility of that claim. To this extent, the deficiency is disapproved. Petitioner’s position on the final issue must, it seems to us, prove unsuccessful, as an inadmissible attempt to compromise two opposite concepts. For a number of years petitioner had made efforts to sell to the county a bridge and tunnel no longer useful to it. In these endeavors sums were expended for promotion, publicity, and the gathering of information. But the attempt had proved unsuccessful. In seeking to deduct the total expended over all the previous years, petitioner argues, on the one hand, that the outlays were not deductible currently as ordinary and necessary business expense, and, on the other, that they were not capital items to be added to the basis of the property and recovered when it is finally disposed of. The theory advanced is that they constitute a sort of intermediate capital investment which may be charged off in the present year because of -the abandonment of the selling project. The most that can be said, however, for the testimony adduced to support this position is that it shows a decision to discontinue expenditures of the same type. There is not shown any cessation of efforts to sell the property, still less any abandonment of the property itself. Petitioner’s president, having referred to an action two years earlier as that “we abandoned any effort as to putting any further money in it,” described the outcome in the year under review only as “a very definite conclusion in 1941 that there was no hope through that sowrce.” (Emphasis added.) Petitioner’s claim to deduct the sums expended in prior years to dispose of a property which it continues to own, and may in fact sell at any time, is not founded upon a sufficiently specific event in the tax year to warrant its allowance as either a current expense or a capital item. It must be rejected. Decision will he entered v/nder Buie SO.